[Civ. No. 20759. Second Dist., Div. Two. Aug. 2, 1955.]

In re TOMMY RAY CORRIGAN, a Minor. RITA JANE CORRIGAN, Appellant, v. FRANK A. COLSTON, Respondent.

[Civ. No. 20760. Second Dist., Div. Two. Aug. 2, 1955.]

In re CHRISTINE JOYCE CORRIGAN, a Minor. RITA JANE CORRIGAN, Appellant, v. FRANK A. COLSTON, Respondent.

[Civ. No. 20761. Second Dist., Div. Two. Aug. 2, 1955.]

In re PATRICIA ANN CORRIGAN, a Minor. RITA JANE CORRIGAN, Appellant, v. FRANK A. COLSTON, Respondent.

Thomas A. Wood, Herbert C. Meade and Moore, Webster, Lindelof & Hughes for Appellant.†

Roy A. Gustafson, District Attorney (Ventura), Bruce A. Thompson, Deputy District Attorney, for Respondent.

FOX, J.—Frank A. Colston, as probation officer, filed separate petitions in the juvenile court of Ventura County

*Assigned by Chairman of Judicial Council.

†Since the briefs were filed, Moore, Webster, Lindelof & Hughes have been substituted as attorneys for appellant.

seeking to have the three minor children of Ray Benard Corrigan and his wife, Rita Jane, declared wards of the juvenile court under subdivisions (b), (d) and (k) of section 700* of the Welfare and Institutions Code. Mr. Corrigan made no denial and offered no defense. Mrs. Corrigan, however, resisted the petitions. The court found the allegations in each petition to be true and found also that the welfare of each child required that custody be taken from its parents. In the judgments the court ordered that each child be made a ward of the juvenile court and committed each child to the care of the probation officer. Mrs. Corrigan appeals from the judgments and orders.

Appellant correctly says "The only question before this court is whether the said judgments of the lower court are sustained by the record." It is therefore necessary to delineate in some detail the vicissitudes and misfortunes that befell these children for some time prior to the hearing in the trial court.

The Corrigan family lived on a ranch, "Corriganville," in Ventura County until the separation of the father and mother on March 28, 1954. On April 10th the mother, with the children, registered at the Cottage Lane Motel in Los Angeles under the name of "Johnson." Moses Stiltz, a friend of the mother, was present at the time. While the mother was at the motel, Stiltz saw her almost every day and night. The landlady referred to Stiltz as "Mr. Johnson" in his presence and he did not inform her of his true name. The mother told the children that their lives were in danger and they must tell people their name was "Johnson." The children referred to themselves as "Johnson" and referred to Stiltz as "daddy."

On about May 11, 1954, the mother, Stiltz and the children left the Cottage Lane Motel. The mother and Stiltz lived together with the children in a motel in Santa Barbara for a period of approximately a week. They were registered as Mr. and Mrs. Stiltz. The mother and Stiltz slept together in the same bed and engaged in sexual intercourse on "numerous oc-

*Section 700 of the Welfare and Institutions Code provides that the jurisdiction of the juvenile court extends to any person under the age of 21 years who comes within any of the following descriptions:

"(b) . . . who has no parent or guardian . . . capable of exercising proper parental control; . . .

"(d) Whose home is an unfit place for him, by reason of neglect, cruelty, or depravity of either of his parents. . . .

"(k) Who is . . . in danger of leading . . . [a] lewd or immoral life."

754

casions.'' The children were in close proximity during these times.

On May 18th, the mother, Stiltz and the children returned to Cottage Lane Motel. On May 27th and 28th Stiltz remained overnight in the motel unit occupied by the mother. On about May 30th the mother and Stiltz were apprehended in bed together, both substantially unclothed. The children were in the next room. The mother testified she did not love Stiltz, but engaged in sexual relations with him because she felt obligated to him. At the time of the hearing on September 28th she still felt obligated to him.

The children, who were respectively 7, 8 and 9 years of age when the petitions herein were filed, were taken out of school by the mother on March 28, 1954, and not returned during that school year.

During the course of the hearing on these petitions on September 28, 1954, the mother of the children admitted that while she was under oath she had not told the truth on two previous occasions.

The evidence indicates that during the time the father and mother lived together on the ranch the father mistreated the children physically and sexually. The mother admitted knowing of such mistreatment. It was only after Stiltz told her that if she did not report this matter to the district attorney he would, that she made such a report but she refused to sign a complaint against the father or otherwise ''press charges.'' The only other protective action she took was to advise the girls to stay out of their father's bed.

There was testimony that the mode of living to which the mother subjected the children caused them to become tense and emotionally upset.

The father and mother were engaged in a bitterly contested divorce suit.

█ In juvenile court proceedings, as in other matters, the findings of the juvenile judge will not be disturbed on appeal where there is substantial evidence to support them. (*In re Ayers*, 116 Cal.App.2d 55, 58 [253 P.2d 65].) █ In wardship proceedings it is the welfare of the child that is of paramount concern (*In re Halamuda*, 85 Cal.App.2d 219, 226 [192 P.2d 781]), and when the court has found, on substantial evidence, that the welfare of the child requires that his custody be taken from his parents, the court may make such an order. (Welf. & Inst. Code, § 739, subd. (d).) █ In

reviewing such findings this court must indulge all reasonable inferences in support thereof.

■ Applying these principles to the conduct and behavior-pattern of appellant, it cannot be said, as a matter of law, that the findings and judgments of the juvenile court are lacking in evidentiary support. Mrs. Corrigan was aware of the father's serious mistreatment of the children for some time while they lived at the ranch, yet she took no decisive and effective action to assure their future protection. It apparently was with hesitation and reluctance that she reported the father's misconduct at all to the authorities for it was only after Stiltz threatened to report the matter that she contacted the district attorney's office. But then she failed to follow through with any effectiveness because of her unwillingness to sign a criminal complaint or otherwise press the charges. The juvenile judge was entitled to take appellant's conduct and failure to take decisive action to protect the children from serious mistreatment into account in determining whether or not she was capable of exercising proper parental control. (*In re Halamuda, supra,* pp. 225-226.)

Appellant's capacity for providing proper parental control for her children does not seem to have improved upon leaving Corriganville. Almost immediately she entered into an adulterous relationship with Stiltz. She caused the children to believe their lives were in danger and instructed them to give a false name and to refer to their relation to Stiltz in an untruthful fashion. She moved from one place to another, keeping the children out of school. She was unable to provide a home for them where they could "live peacefully and grow into normal youth." (See *In re Halamuda, supra,* p. 225.) It is understandable that their nomadic life of moral poverty and insecurity caused the children to be tense and emotionally upset.

Appellant's instruction of her children in the technique of deception and untruthfulness appears to be in harmony with her own standards and practices for she sought to deceive the court on two occasions by making statements under oath that she knew were not true. This was a circumstance to be considered by the trial judge together with all the other evidence in arriving at his ultimate decision. (See *Guardianship of Jones,* 86 Cal.App.2d 35, 39 [194 P.2d 141].)

Appellant's inability to do anything substantially to protect her children from the mistreatment of their father while she lived with him; her unconventional mode of living after

she separated from him; and her lack of basic concepts of good citizenship in training her children, furnish ample support for the court's finding that she was incapable of exercising proper parental control over her children and that their welfare required that their care and custody be taken from her.

Appellant concedes that she conducted herself "imprudently" with Stiltz but argues there was no evidence "that said conduct was in the presence of the children, or that the children were aware of said conduct or were in any way scandalized by it." It is no doubt true that the children did not have actual knowledge of the admitted intimacies between their mother and Stiltz, but they knew he was occupying the same living quarters wtih their mother, and their instruction to call him "daddy" would certainly indicate a close family relationship. Furthermore, it is not necessary that conditions be so bad or so notorious as to become a public scandal before a juvenile court may step in for the protection and welfare of the children. The capability of a parent to exercise proper parental control is largely determined by external standards and the likely effect continued misconduct will ultimately have on the welfare of a child as it grows up and realizes the significance of such misbehavior rather than the immediate effect upon the child, particularly where it is very young. It is the conduct of the parent which determines whether he or she is capable of exercising proper parental control. Here the conduct of appellant was such that the trial judge could reasonably find her incapable of exercising proper parental control even though the children were not "scandalized" by her misbehavior.

Appellant also argues that her mode of living and behavior-pattern at the time of the hearing should alone be considered in passing on her capacity to provide proper parental control of her children. In this connection she points out that immediately after the raid on May 30th she took up residence with her children in San Jacinto, California, as a result of arrangements made by her then counsel; that she came back to a motel in Ventura sometime in June on account of the court proceedings and that she has since been residing with a family in Reseda, California. Her counsel advised the manager of the Ventura motel "to keep Mr. Corrigan out of there, and if Mr. Stiltz showed up, to keep him out" too. Also, counsel testified that "from the moment of the raid up until this time she has never been out of anybody's

sight so that anything could happen or any claim could be made." Appellant further asserts that she has not seen Stiltz since the raid except in the courtroom. As a part of her argument, appellant contends it was improper for the trial judge to take into consideration her prior conduct in passing on her capacity to provide proper parental control for her children. It was, of course, proper to consider her mode of living and conduct up to the time of the hearing, but it was also proper for the trial judge to take into account the other incidents referred to herein—all of which had occurred during the past few months. In *Dupes* v. *Superior Court,* 176 Cal. 440 [168 P. 888], a juvenile court matter, it is said, at page 442, that "In passing upon the question regarding the fitness or unfitness of the mother, the court will be aided by evidence of her conduct in the past . . ." To the same precise effect is *In re Holt,* 121 Cal.App.2d 276, 279 [263 P.2d 50]. See also *Guardianship of Coughlin,* 129 Cal.App.2d 290 [276 P.2d 841].

Appellant makes the incidental argument that she was entitled to specific findings on the several allegations in the petitions. The juvenile court law does not require the making of specific findings. The juvenile judge did, however, make a written finding in each of these cases in the following language: "The court finds that *all* of the allegations of the petition are true. . . ." (Emphasis added.) This general finding is sufficient to show the facts upon which the court exercised its jurisdiction to declare the minor a ward. (Welf. & Inst. Code, § 735; *In re Ortiz,* 74 Cal.App.2d 810, 814-815 [169 P.2d 664].)

In support of the portion of the judgment depriving appellant of the custody and control of each of the children the court found that "the welfare of the minor requires that her [or his] custody be taken from both parents." This finding is in strict compliance with section 739, subdivision (d), Welfare and Institutions Code. (*In re Ortiz, supra,* p. 815; *In re Holt, supra.*)

Since the evidence is sufficient to establish that the Corrigan children come within subdivision (b) of section 700, Welfare and Institutions Code, it is unnecessary to consider whether they also come within subdivisions (d) and (k) of that section for, in any event, the judgments must be affirmed.

Each judgment and order is affirmed.

Moore, P. J., and McComb, J., concurred.