[Civ. No. 51048. Second Dist., Div. One. Mar. 9, 1978.]

In re STANLEY F., JR., et al.,
Persons Coming Under the Juvenile Court Law.
ELLIS P. MURPHY, as Director, etc., Plaintiff and Respondent, v.
HERRINE F., Defendant and Appellant;
STANLEY F., SR., Defendant and Respondent.

**COUNSEL**

Tibor I. Toczauer, under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larsen, County Counsel, and Robert Scot Clifford, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**WOOD, P. J.**—Herrine F. and Stanley F., Sr., are the parents of the minors, Stanley F., Jr., born March 7, 1969, and Glinnie F., born April 27, 1970. In 1973, upon petition of director of department of public social services (DPSS hereinafter), the minors were declared dependent children under former section 600, subdivisions (a) and (b), of the Welfare and Institutions Code (now § 300); and it was ordered that they be "suitably placed."

They were placed in foster homes. In 1974, 1975, and 1976, when the matter was reviewed at hearings, it was ordered that the minors remain in foster homes. In 1977, when the matters were heard again, a referee ordered that (1) the minors remain placed under supervision of the department, (2) DPSS is authorized to refer the matter to department of adoptions, (3) visitation shall be at the discretion of DPSS, and (4) if DPSS does not refer the matter to department of adoptions, then DPSS must set up visitation. The mother's petition for rehearing of the disposition proceeding (wherein a referee had presided) was denied by a judge. (Welf. & Inst. Code, § 558.) The mother appeals from the "Judgment rendered against her." The father testified at the disposition hearing in 1977—he did not petition for rehearing or file notice of appeal.

Appellant (mother) contends that (1) referral for adoption was an unwarrantedly harsh decision, and (2) the referee erred in excluding her from chambers while Stanley, Jr., testified in chambers.

At the disposition hearing (1977) wherein it was ordered that DPSS might refer the matter to department of adoptions, there was testimony by the parents and by Stanley, Jr., and there were four reports (made in 1976 and 1977) by children's services workers of DPSS. (Record on appeal was augmented to include those reports.)

For several years prior to 1973, DPSS and other community agencies and persons (including psychiatrists, therapists, employment counselors,

and rehabilitation workers) assisted Mrs. F. with reference to her personal problems. In 1973, DPSS filed petitions on behalf of these minors and alleged that they did not have a parent capable of exercising proper and effective parental care and control of them; and that their home was an unfit place for them by reason of neglect by their mother. The petition was heard by a referee, and it was found that the allegations of the petition were true and that each minor was a person described by (former) section 600, subdivisions (a) and (b), of the Welfare and Institutions Code.[1]

At that time (1973), Stanley was four years of age, and Glinnie was three years of age; they were living with the mother; Glinnie, who could not speak, was placed in a "Headstart" program by reason of environmental retardation; Stanley was proud of his ability to steal; and the behavior problems of both minors were so severe that they could not immediately be placed in a foster home.

During the period from the 1973 disposition to the present hearing in 1977, the mother received from agencies and persons assistance which was similar to the assistance she had received prior to 1973. Three physicians were of the opinion that she was infantile, dependent, helpless, and had impaired judgment; she needed years of treatment before any change could be effected; and she could not be treated because she was unwilling to obtain help. One physician concluded that she was unable emotionally to care for her children presently or in the foreseeable future. A psychiatrist concluded that she has a mental disorder of chronic schizophrenia; she gives the impression of actively hallucinating; she is totally disabled; he cannot visualize her being able to care for her children in the foreseeable future; and she needs treatment, but refuses to accept treatment.

Stanley's foster parents were satisfied with his behavior; he received "A" grades in school; and his teachers stated that it is a pleasure to have

---

[1] At that time (former) section 600 provided:

"Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, or whose home is an unfit place for him by reason of neglect, cruelty, or depravity of either of his parents, or of his guardian or other person in whose custody or care he is."

him in class. Glinnie's therapists recommended that he remain in foster placement by reason of the possibility of disruptions that could cause regressive behavior if he were removed from such placement.

In April 1976 the court, in order to determine whether the minors might be reunited with their parents, ordered a schedule whereby the minors would spend weekend visits with the parents on condition that DPSS might terminate the visits if there was harm to the minors. When Stanley was returned to the foster home after a weekend visit, his jaw was swollen, finger-imprints were on the right side of his face, abrasions and discolorations were on his skin, and there were deeply colored blotches on his neck "suggestive of being choke marks." There was evidence that the mother was present when the injuries occurred, and she allowed occurrences because she was not able to handle the situation; that the mother's living arrangements where the visits occurred were totally inadequate; and that both minors were confused by reason of conflicting orders given to them by adults during the visits. DPSS terminated the visits and reported to the court.

On July 28, 1976, the court ordered that the weekend visits terminate, and that DPSS report to the court on the possibility of reuniting the family, and that DPSS permit the parents to visit the minors at least once a month. In the six-month period thereafter (until present hearing in January 1977) the mother requested and made three visits, and the father requested and made two visits.[2]

Pursuant to the above order, the department presented a 15-page report wherein it was recommended that the court authorize referral of the minors to the department of adoptions on the ground that the possibility of reuniting the family was poor.

A social worker testified that in order for any plan for the mother to regain custody of the minors to be successful, the mother would need intensive therapy. The mother testified that there was no need for her to be counseled. Other evidence was that all past planning to reunite the family had failed because the parents would not cooperate with the plan; and the mother remained "aloof from the children's needs" and her relationship with the children had not improved.

[2]There was evidence to the effect that the father abandoned the minors prior to commencement of the proceedings in juvenile court; he did not visit the minors in the first two years of their placement in foster homes; and although he complained about the mother's inability to care for them, he did not take any action to protect them from neglect or abuse.

After the mother presented evidence, her counsel suggested that Stanley "meet with us in chambers." Counsel for the other parties (father, minors, department) agreed with the suggestion; and counsel for the minors requested that the parties other than Stanley not be present in chambers. Counsel for the mother conferred with her; and then he requested that Stanley be heard in court (and not in chambers). The judge said that Stanley would be heard in chambers in the presence of all of the attorneys, and that the other parties would not be present in chambers.

Stanley testified in chambers in the presence of all of the attorneys; and a court reporter transcribed the proceedings. He testified in substance that he would rather stay in the foster home than live with his mother and father; and he would not like to live with his mother. When he was asked if he had a chance to go back and live with his mother and father, or to stay with Mr. and Mrs. Kelley (foster parents), or to have a new mother and father, he said he "want[ed] a new mommy and daddy."

The parties and counsel returned to the courtroom; and the judge afforded the mother's attorney an opportunity to discuss with her the testimony that Stanley had given. Then the judge asked her attorney whether he was ready to proceed. He replied that he had no further witnesses.

Appellant (mother) contends that the court erred in excluding her from chambers while Stanley testified. As above noted, her counsel requested that testimony of Stanley be given in chambers; and the other attorneys agreed as to that request. When counsel for the minors suggested that the other parties be excluded, counsel for the mother requested that Stanley testify in court; however, counsel for the mother did not object to Stanley's testimony.

In any event, counsel for all parties were present in chambers when Stanley testified; and his testimony was transcribed by a reporter. Other jurisdictions have approved similar procedure for testimony by a minor—i.e., exclusion of other parties, provided all counsel are present and the testimony is transcribed. (See *Willingham* v. *Willingham,* 192 Ga. 405 [15 S.E.2d 514]; *Commonwealth* ex rel. *Bowser* v. *Bowser,* 224 Pa.Super. 1 [302 A.2d 450, 451]; *Cheppa* v. *Cheppa,* 246 Pa.Super. 149 [369 A.2d 854, 856]; *Marshall* v. *Stefanides,* 17 Md.App. 364 [302 A.2d 682, 685]; *Lincoln* v. *Lincoln,* 24 N.Y.2d 270 [299 N.Y.S.2d 842. 247 N.E.2d 659, 660].)

■ In California wardship proceedings the welfare of the child is of paramount concern. (*In re Farley,* 162 Cal.App.2d 474, 478 [328 P.2d 230]; *In re Corrigan,* 134 Cal.App.2d 751, 754-755 [286 P.2d 32]; *In re Raya,* 255 Cal.App.2d 260, 265 [63 Cal.Rptr. 252].)

■ In *Jenkins* v. *Jenkins,* 125 Cal.App.2d 109 [269 P.2d 908], which was a divorce case, the court (p. 113) disapproved "the practice of a judge in a custody proceeding talking to a minor in private over the objection of either party." As the court noted in that case, however (p. 112), the judge "talked to [the minor] in chambers without the presence of a reporter or counsel. The court did not state for the record what the conversation had been." It was also said therein (p. 113) that " '. . . it would be the part of wisdom for the court to make a record of such interviews with children in custody cases in order to protect itself against any suspicion of unfairness on the part of the parent against whom the decision is rendered.' " (See *Smith* v. *Smith,* 137 Cal.App.2d 512, 514 [290 P.2d 609].)

In the present case, wherein counsel for all parties were present when the minor testified and his testimony was transcribed by a reporter, and counsel for the mother was afforded an opportunity to discuss such testimony and proceed further, the court did not abuse its discretion in excluding the other parties while the minor testified.

Appellant contends further that referral of the minors for adoption was an unwarrantedly harsh decision.

■ As previously stated, in wardship proceedings the welfare of the minor is of paramount concern. (*In re Farley, supra,* 162 Cal.App.2d 474, 478; *In re Corrigan, supra,* 134 Cal.App.2d 751, 754-755.) ■ The juvenile court may find that all of the allegations of the petition are true. (*In re Walker,* 159 Cal.App.2d 463, 467 [324 P.2d 32].) ■ Findings of the juvenile court will not be disturbed on appeal where there is substantial evidence to support them (*In re Corrigan, supra,* p. 754; see *In re Biggs,* 17 Cal.App.3d 337, 340 [94 Cal.Rptr. 519]); and this court "must indulge in all reasonable inferences to support the findings of the juvenile court [citation]," and must " ' . . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.,* 31 Cal.App.3d 112, 114 [107 Cal.Rptr. 62].)

■ In the present case, the disposition order (of Jan. 25, 1977) provided in part that the suitable placement order of July 26, 1973, remain in full force and effect; the minors are to remain as placed under

the supervision of DPSS; the court authorizes DPSS to refer the matter to the department of adoptions; and if DPSS does not refer the matter to said department, then visitation shall be at the discretion of DPSS. The disposition order did not terminate parental rights—it merely included an expression of court approval for DPSS to refer the minors to the department of adoptions. The disposition order was supported by substantial evidence.

The disposition order of January 25, 1977, and the order (of Feb. 7, 1977) denying the application for rehearing are affirmed.

Lillie, J., and Thompson, J., concurred.