Filed 4/10/15  Margaret M. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARGARET M., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F070874 <br><br> (Super. Ct. No. 13CEJ300341-1,2) <br><br><br> **OPINION** |

THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review. Mary Dolas, Judge.

Heather A. Von Hagen for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Real Party in Interest.

_____

[*]     Before Kane, Acting P.J., Franson, J. and Peña, J.

-ooOoo-

Petitioner Margaret M. is the mother of two sons, J. and Z., who are the subject of these juvenile dependency proceedings. In this writ petition, petitioner asks us to reverse the juvenile court's orders of January 20, 2015, terminating her reunification services and setting a hearing under Welfare and Institutions Code section 366.26[1], where the juvenile court will consider whether to terminate petitioner's parental rights to J. and Z. Specifically, petitioner argues that the department failed to provide reasonable services and that the juvenile court erred in terminating her reunification services because she had made significant progress in her case plan and in resolving the problems that led to J. and Z.'s removal, and that there was a substantial probability that J. and Z. could be returned to petitioner within the 18-month time frame after removal. We deny the petition.

## STATEMENT OF THE CASE AND FACTS

*Detention/Jurisdiction/Disposition*

In November 2013, a section 300 petition was filed and J., then three years old, and Z., then 14 months old, were removed from petitioner's care after it was reported that petitioner was using methamphetamine and was unable to provide her children with food, housing and a safe environment. Petitioner was ordered to receive family reunification services consisting of parenting classes, a mental health assessment and recommended treatment, a substance abuse evaluation and recommended treatment, random drug testing, and a domestic violence evaluation and recommended treatment. The Fresno County Department of Social Services (department) was given discretion to advance petitioner's visits to unsupervised and overnight. Mental health assessments and recommended treatment were ordered for J. and Z.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

J. and Z. were placed with their maternal relatives. At the time of disposition, J. appeared to have a fear of having food taken from him, and he cried at visits. He did better with the relative care provider.

*Six-Month Review*

At the time of the August 2014 six-month review, the department recommended that family reunification services be terminated, as petitioner made minimal efforts to participate in services. Since December of 2013, petitioner had been referred to four substance abuse programs, but failed to follow through on any of them. Petitioner was again referred to a treatment program and finally started treatment on June 4, 2014. Petitioner had not participated in random drug testing during the course of the case. She had been scheduled twice for parenting class, but was dropped for excessive absences. Petitioner had attended her domestic violence evaluation in January 2014, and was to be referred to a domestic violence group after she finished inpatient treatment.

Petitioner had been having visits with J. and Z. once a week, supervised by the relative care provider. Petitioner missed visits for several weeks between the middle of January and middle of February 2014. She began visits again in the middle of February, missed a few visits after that, and then stopped contact with the relative care provider at the end of May 2014.

According to the relative care provider, J. did not listen to petitioner during visits, and, although he was toilet trained, he wet himself after visits with mother. Both J. and Z. were destructive after visits with petitioner. Both continued to overeat and constantly stated they were hungry. A mental health assessment was completed for J. and he was referred for ongoing treatment. As of June of 2014, he was on a waiting list for a therapist. No mental health services were recommended for Z.

A contested hearing was held August 4 and 6, 2014. The juvenile court found that the department had provided reasonable services for petitioner, but that she had failed to participate regularly. The juvenile court did note that, while the department reported that

3.

petitioner had failed to make substantial progress, there was evidence to show that, since enrolling in the substance abuse program in June, petitioner had made good progress. She was participating in random drug testing with negative results. She was also participating in the following: parenting classes or would resume participating in parenting classes (the record was not clear); domestic violence counseling; individual counseling; and codependency counseling. According to a letter admitted into evidence and by testimony, petitioner was making significant progress and was demonstrating a change in her life which was also shown by the fact that she had given birth to her youngest child, A., during that period, who remained in petitioner's care and there was no showing that petitioner posed any risk to her.

The juvenile court noted that J. and Z. had had four placements since being removed, and the department was in the process of identifying yet another care provider for them.

Finding substantial probability that J. and Z. would be returned to petitioner by the time of the 12-month review, the juvenile court continued family reunification services for petitioner. The juvenile court instructed the department to amend the case plan to incorporate counseling for J. and conjoint counseling for petitioner and J. to repair their relationship. The department was again given discretion to advance visitation to unsupervised and overnight visits. A visitation review was set for September 8, 2014.

*Visitation Review*

By the time of the visitation review hearing in September 2014, petitioner's visits with J. and Z. were reported to be "going well." The care providers, however, stated that J. and Z. had issues on their visit days and had been acting out, at times screaming and seeming to be confused. Z. would scream "no mommy" before visits; J. stated that he did not like his mother anymore and that he was nervous or anxious on the way to visits. The department opined that therapeutic supervised visits between J. and Z. and petitioner might ease some of the anxiety. A referral was requested for such visits.

4.

Petitioner presented a letter dated September 5, 2014, from her case manager at her treatment program stating she was making good progress and attending a variety of classes and therapies. According to the case manager, petitioner appeared to be working to the best of her abilities to change her past destructive lifestyle. The case manager hoped that the juvenile court would place J. and Z. with petitioner at the program.

At the visitation review hearing, the department asked that Z. be re-referred for a mental health assessment, as he was beginning to act out. The department also requested therapeutic supervised visits. Counsel for J. and Z., as well as petitioner's counsel, did not think therapeutic supervised visits would address the minors' behavior, but that therapy might. Petitioner's counsel expressed concern that no steps had been taken to implement the conjoint counseling, and that it did not seem that there was a plan in place for building the mother/child relationship and decreasing the children's negative behavior.

The juvenile court noted that, as ordered at the last court date, the department was to make an assessment regarding what therapy or counseling would be beneficial to petitioner and the children. As there was no assessment in the report, the juvenile court did not know if the department had followed through as yet. The juvenile court then ordered therapeutic supervised visits, as well as a second mental health assessment for Z. The matter was continued until the end of September.

On September 29, 2014, minors' counsel stated that she had contacted J.'s therapist to discuss the possibility of providing therapy for Z. as well. The therapist stated that he would be willing to perform conjoint therapy between petitioner and the children.

_Twelve-Month Review_

In a status review report dated November 2014, the department recommended that family reunification services continue for petitioner. She had been enrolled in treatment since the beginning of June 2014 and was scheduled to complete the program at the

beginning of December 2014. She had been doing well and participating in all of her classes. Petitioner had been attending parenting classes since August of 2014. Although she had not yet scheduled her mental health assessment as advised, petitioner had been attending weekly therapy sessions at the program. Her therapist in the program reported that petitioner was actively participating in the group. Petitioner was addressing domestic violence issues while at the program and with her therapist there as well. All of petitioner's drug tests since June 2014 were negative.

Petitioner had visited her children consistently since the beginning of June; therapeutic visits began in September of 2014. According to the care providers, the children's behavior surrounding visits had improved "a little." The care providers still had concerns regarding the transition to unsupervised visits. As a result, the department held a meeting between the care providers and petitioner to work on transitioning to unsupervised visits. The supervisor for the therapeutic supervised visits reported that petitioner did well with the children during the visits and that the therapeutic supervised visits could continue a bit longer or they could be moved to unsupervised visits. The department decided there was no reason to continue with therapeutic supervised visits and mother could start unsupervised visits in November 2014.

J. was in therapy once a week. The therapist stated that J. was very friendly, but his play was sporadic and seemed to be aggressive in nature. J. was reported to still have some issues before and after visits, although some improvement was noted. Z. also had issues with the visits, crying before the visits and becoming very clingy after, although his behavior had also improved a bit. Z. was re-referred for a mental health assessment and was in the process of being scheduled for an appointment.

A contested review hearing was set for January 7, 2015. An addendum report dated December 30, 2014, recommended that petitioner continue to receive reunification services. The report stated that petitioner had been compliant with the court-ordered services and had completed her six-month inpatient treatment program at the beginning

of December and was now in aftercare. She had unsupervised visits with J. and Z. and continued to care for A., now five months old. Petitioner and A. were residing with petitioner's mother. There was a bedroom available for J. and Z. in the home.

The report stated that petitioner had made significant progress in complying with her services. She was estimated to complete her aftercare program around the beginning of March 2015. She had completed her parenting classes and was participating in therapy. She continued to test negative on her drug tests. Visits were consistent. A., who was not a dependent of the court, appeared to do well in petitioner's care. Although the department did not recommend that J. and Z. be returned to petitioner "at this time," they stated there was a "probability" that petitioner would be able to reunify with J. and Z. by the middle of May 2015.

A contested hearing was held January 7 and 8, 2015. The juvenile court issued its ruling January 20, 2015, finding that petitioner was provided reasonable services but failed to make significant progress toward resolving the problems that necessitated the children's removal and that there was not a substantial probability that the children would be able to be returned to petitioner by the time of the next hearing. Consequently, the juvenile court terminated petitioner's reunification services and set a section 366.26 hearing for April 22, 2015. In making its ruling, the juvenile court found that the department provided sufficient evidence that return of the minors to petitioner's custody would create "a substantial risk of detriment to their safety, protection, physical and emotional well being" and that continued placement of the children was necessary and appropriate.

The juvenile court also found that the department had not shown a substantial probability that J. and Z. would be returned to petitioner prior to the next review hearing. In making its finding, the juvenile court noted the department's assertion that there was a "probability" that the minors would be returned to petitioner prior to the next review hearing, but found "the evidence used to support that assertion is lacking." The juvenile

7.

court found that, while the department was making assertions and conclusions in the report, "the evidence in their own report is not convincing and identifies a number of problem areas and a number of concerns that still exist that make it problematic as to whether the children will be able to be returned." The juvenile court specifically noted that, while petitioner had recently and consistently contacted and visited the minors, "the lack of consistent contact and visits early on and the significant neglect and damage these two children experienced show that there has not been a significant progress in resolving the problems that led to their removal. And I don't believe there's been evidence to support that mother has the ability at this time to complete the objectives of her treatment plan to be able to provide for these two children's safety, protection, physical and emotional well-being within the statutory time period." According to the juvenile court, "[t]he damage appears to be too significant and there's just not enough time remaining. It's unfortunate mother would not take advantage of the entire time and waited so long. But I think at this point it's too little too late."

This petition ensued.

## DISCUSSION

Petitioner now contends that the juvenile court erred (1) when it found that the department provided reasonable services; and (2) when it terminated reunification services, finding that the evidence did not show a substantial probability that J. and Z. could be safely returned to petitioner's care prior to the next review hearing; that petitioner had not made significant progress in resolving the issues that led to the children's removal; and that there was no evidence to support petitioner's ability to complete the objectives of her treatment plan and provide for the children's safety, protection, physical and emotional well-being within the statutory period.

I. REASONABLE SERVICES

We first address petitioner's contention that the juvenile court erred when it found that the department provided reasonable services. The juvenile court made a reasonable

services finding on January 20, 2015, at the conclusion of the contested 12-month review hearing.

"'In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed.' [Citation.]" (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.)

> "The adequacy of reunification plans and the reasonableness of the [agency's] efforts are judged according to the circumstances of each case. (*In re Edward C.* (1981) 126 Cal.App.3d 193, 205 [A plan 'must be appropriate for each family and be based on the unique facts relating to that family'].) Moreover, the [agency] must make '[a] good faith effort to develop and implement a family reunification plan.' (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254.) … '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed).' [Citation.]" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164-1165.)

The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011; *In re Edward C., supra,* 126 Cal.App.3d at p. 205.) The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

### *Visitation and Mental Health Services*

Petitioner argues that she participated in all services and did all she could to ameliorate the conditions that led to the removal of her children, but that the department failed to develop or implement an appropriate plan to advance visitation, which is critical

to reunification. According to petitioner, conjoint therapy was incorporated into the case plan but never provided, and the behavioral concerns at visitation that were interfering with advancement of visitation were therefore never addressed. Instead, according to petitioner, the department focused on unnecessarily requiring therapeutic visitation, which "wasted valuable time." We disagree.

The record shows that petitioner failed to visit the children consistently from the time the children entered the dependency system in November of 2013 until the time she finally entered inpatient substance abuse treatment at the beginning of June 2014. Restarting regular visitation at that point caused the children a great deal of issues before and after the visits, including acting out, crying, and confusion. Because of this, the department began therapeutic supervised visits beginning in September of 2014.

Petitioner's argument is that, rather than therapeutic supervised visits, the department should have focused on conjoint therapy, which would have allowed petitioner and the children to progress to overnight visitation. Petitioner argues the department's "failure to provide any mental health services for over twelve months to address the minors' obvious behavior concerns *delayed* visitation and was clearly unreasonable under the circumstances." However, the record shows that both children participated in mental health assessments in April of 2014, many months prior to the January 2015 review hearing. At the time of the assessments, Z. was not recommended for further mental health services; J. was referred for individual therapy by the department. J. was taken to a private provider by his caretakers while the referral from the department was pending. He continued to participate in individual therapy once a week since the middle of 2014. Z. began having behavioral issues only after mother began regular visitation with the children. At that time, the department determined that Z. would likely benefit from a second mental health assessment and asked the juvenile court to make such an order. At the time of the 12-month review hearing, Z. was in the process of being scheduled for such an assessment. The social worker had also spoken to

10.

the therapist about conjoint therapy and the therapist said he would be willing to do it. However, when asked if a start date had been discussed the social worker stated, "No. When I've had other cases where that's being discussed, usually the therapist has told me they would let me know when they felt it was a good time."

On the facts of this case, while there was delay in individual therapy for Z. and possible conjoint therapy for petitioner and the children, we cannot say that the services provided were unreasonable. As stated in *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1159:

> "Clearly, the delay in the minor's individual counseling rendered the services provided imperfect, but rarely will services be perfect. [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]"

Here, the department made reasonable efforts to encourage and facilitate visits and additional mental health options for petitioner and the children.

### *Housing*

Petitioner makes the additional argument that the department should have informed her that living with her mother would thwart her overnight visits or of having the children placed with her. We find her argument meritless.

As evidenced by the record, petitioner's choice of living with her mother was discussed with her. According to the social worker who testified at the 12-month review hearing, when petitioner completed inpatient treatment, she chose to move to Kerman to live with her mother, although the department would have provided transitional housing for her, a fact that was discussed with petitioner. Petitioner had said she preferred to be with her mother because she did not feel Fresno was a good place for her. The department explained to petitioner that her mother's home would have to pass an inspection in order for the children to be able to visit. And according to the social worker who testified at the review hearing, the department was not able to "clear the home," but

11.

that once it was cleared for visits, it would not be difficult for the children to be placed there. The addendum report prepared for the 12-month review hearing stated that petitioner's mother's home was "cluttered and [petitioner] agreed to clear out the clutter in the home so that she may visit with J[.] and Z[.] in her home." Housing was adequately discussed with petitioner.

*Domestic Violence Treatment*

Petitioner finally alleges that reasonable services were not provided because the department never referred her for domestic violence treatment or a domestic violence victim's group that was required as part of her court-ordered treatment plan. Again, we reject her contention.

The record shows that petitioner had attended her domestic violence evaluation in January 2014, and was to be referred to a domestic violence group after she finished inpatient treatment. The report in anticipation of the 12-month review stated that petitioner just completed inpatient treatment in December of 2014, a month before the review hearing. While in the inpatient program, she had actively participated in services and weekly therapy sessions, and she was addressing domestic violence in those services and with her therapist. Thus, while she may not have been referred to a specific domestic violence group, she was receiving services in that area.

*Conclusion*

Substantial evidence supports the juvenile court's finding that reasonable services were provided petitioner and we reject her claim to the contrary.

## II. TERMINATION OF REUNIFICATION SERVICES

Petitioner contends that there is no substantial evidence to support the juvenile court's order terminating reunification services because she had made significant progress in her case plan and in resolving the problems that led to J. and Z.'s removal, and that there was a substantial probability that J. and Z. could be returned to petitioner within the 18-month time frame after removal.

"[F]amily preservation is the first priority when dependency proceedings are commenced. [Citation.]" (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1112.) For that reason, the juvenile court is required to provide family reunification services when it removes a child from parental custody. (§ 361.5, subd. (a); but see *id.*, subd. (b).) However, the duration of family reunification services is not limitless. Further, expeditious resolution of the dependent child's status is also a priority, especially where infants and toddlers are involved. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 174-175.)

When children are removed from parental custody, the age of the child at removal generally dictates the duration of reunification services. As a general rule, parents are granted 12 months of services if the child is three years of age or older and six months of services if the child is under the age of three. (§ 361.5, subd. (a)(1)(A)-(B).) However, as relevant here, reunification services for a sibling group which includes a child under the age of three are provided for a period of six months from the dispositional hearing as provided in section 366.21, subdivision (e), but no longer than 12 months from the date the child entered foster care as provided in section 361.49, unless the child is returned to the home of the parent or guardian. (§ 361.5, subd. (a)(1)(C).) Notwithstanding subparagraphs (A), (B), and (C) of paragraph (1) of section 361.5, court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from the parent's custody. (§ 361.5, subd. (a)(3).)

In order to extend reunification services, the juvenile court must find that there is a "substantial probability" that the child will be returned to parental custody and "safely maintained" in the home within the extended time or that reasonable services were not provided. (§ 366.21, subd. (g)(1); see also § 361.5, subd. (a).) In order to find there is a substantial probability that the child will be returned to the physical custody of his or her parent and safely maintained in the home within the extended period of time, the court must find: "(A) That the parent … has consistently and regularly contacted and visited

13.

with the child. [¶] (B) That the parent … has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent … has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1).)

The applicable standard of review is sufficiency of the evidence (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346) and it is petitioner's burden of showing the finding or order is not supported by substantial evidence. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 250-251.)

In this case, May 2015 marks the 18-month maximum period of reunification services. In order to continue reunification services until then, the juvenile court had to find that there was a substantial probability that J. and Z. could be placed with petitioner and safely maintained in her home by that time. The juvenile court stated it could not make those findings since petitioner, although making strides in her case plan, had not progressed to the point where she could safely care for J. and Z. on her own and she would not be able to do so by May of 2015. We concur.

J. and Z. were originally detained in November of 2013. While petitioner was now making progress in her case plan, she was already given a second chance for reunification services at the six-month review hearing because it was not until June of 2014, some six months after the children were detained, that petitioner even began substance abuse treatment and visiting the children regularly. She completed her inpatient treatment in December of 2014 and, even assuming she would continue her outpatient treatment, she was not scheduled to complete her outpatient program until the beginning of May 2015. And while petitioner was now consistently and regularly visiting the children, she had just begun unsupervised visits in December of 2014. In addition, while the department opined that petitioner was not ready to provide for J. and

Z.'s well-being at the time of the January 2015 hearing, it stated, without assurance, that there was a "probability" she would be able to do so by the middle of May 2015.

"The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)  Further, the juvenile court may consider all relevant evidence in making its findings. (*M.V. v. Superior Court, supra,* 167 Cal.App.4th at p. 181.)  It alone determines where the weight of the evidence lies. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

The appellate record in this case contains substantial evidence supporting the juvenile court's finding that there was not a substantial probability J. and Z. could be returned to petitioner's custody by the 18-month review hearing.  We thus reject petitioner's contention that the juvenile court erred when it terminated petitioner's reunification services and set a section 366.26 hearing to consider terminating her parental rights.

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.